**SMITH EIBELER, LLC**
**Robert W. Smith, Esq. ID# 044341987**
**101 Crawfords Corner Road, Suite 1-105R**
**Holmdel, New Jersey 07733**
**(732) 935-7246**

**ZATUCHNI & ASSOCIATES,LLC**
**David Zatuchni, Esq. ID# 077811997**
**287 South Main Street**
**Lambertville, NJ 08530**
**(609) 243-0300**

| | |
|---|---|
| **KEVIN PEREZ; DWAYNE BOWEN; REYNALDO DEJESUS; KELVIN JONES; TIMOTHY MCNEILL; SCOTT BRUNSON; JERMAINE BENDERS; GEORGE BOSCH; ROBERTO COSME; KYLE JOBES; JACQUES MANN; AMIR MUHAMMAD; EDWIN NUNEZ; JOEL RIOS; ANTHONY BRUNO and GREGORY LINDSEY,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**CLEAN VENTURE, INC. d/b/a ACV ENVIRO CV, and ACV ENVIRO 1045 RE LLC; ACV ENVIRO CORPORATION; CORPORATIONS 1-10; JOHN DOES 1-10,**<br><br>**Defendants.** | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION: UNION COUNTY**<br>**DOCKET NO:**<br><br><br>**CIVIL ACTION**<br><br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, by and through their counsel, by way of Complaint against Defendants Clean

Venture Inc. d/b/a ACV ENVIRO CV and ACV ENVIRO 1045 RE, LLC; ACV Enviro Corporation;

Corporations 1-10; and John Does 1-10, hereby state and allege as follows:

### INTRODUCTION

1.    Plaintiff Kevin Perez is a New Jersey resident currently residing at 440 Gawron

Court, Parlin, New Jersey 08859.

2.      Plaintiff Dwayne Bowen is a New Jersey resident currently residing at 302 East 4th Street, Plainfield, New Jersey 07060.

3.      Plaintiff Reynaldo DeJesus is a New Jersey resident currently residing at 624 Dorothy Lane, Landing, New Jersey 07850.

4.      Plaintiff Kelvin Jones is a New Jersey resident currently residing at 15 Elliott Place, East Orange, New Jersey 07018.

5.      Plaintiff Timothy McNeill is a New Jersey resident currently residing at 482 Seminary Avenue, Rahway, New Jersey 07065.

6.      Plaintiff Scott Brunson is a New Jersey resident currently residing at 2 Plymouth Drive, Whiting, New Jersey 08759.

7.      Plaintiff Jermaine Benders is a New Jersey resident currently residing at 17 Bamford Place, Irvington, New Jersey 07111.

8.      Plaintiff George Bosch, Jr., is a New Jersey resident currently residing at 375 N 11th St., Newark, New Jersey 07107.

9.      Plaintiff Roberto Cosme is a New Jersey resident currently residing at 853 Summer Avenue, Newark, New Jersey 07104.

10.      Plaintiff Kyle Jobes is a New Jersey resident currently residing at 44 Windsor Drive, East Brunswick, New Jersey 08816.

11.      Plaintiff Jacques Mann is a New Jersey resident currently residing at 251 Franklin Street, Apt. 4, Elizabeth, New Jersey 07206.

12.      Plaintiff Amir Muhammad is a New Jersey resident currently residing at 2038 Kay Avenue, Union, New Jersey 07083.

13.     Plaintiff Edwin Nunez is a New Jersey resident currently residing at 152 Prospect Ave., Bayonne, New Jersey 07002.

14.     Plaintiff Joel Rios is a New Jersey resident currently residing at 465 W. 1st Ave., Roselle, New Jersey 07203.

15.      Plaintiff Anthony Bruno is a New Jersey resident currently residing at 19 South 5th Street, Elizabeth, New Jersey 07206.

16.     Plaintiff Gregory Lindsey is a New Jersey resident currently residing at 585 Perchuk Lane, Jackson, New Jersey 08527.

17.     Defendant Clean Venture, Inc. ("CVI") is a for-profit corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 201 South First Street, Elizabeth, New Jersey 07206.

18.     CVI has at all relevant times engaged in the business of industrial, environmental, and hazardous waste containment and removal services, including for large scale construction projects.

19.     Upon information and belief, ACV Enviro Corporation ("ACV") was formed in or about 2015 through the merger of multiple entities, including CVI, by the private equity firm Kinderhook Industries ("Kinderhook").

20.     Upon information and belief, Kinderhook created ACV after purchasing multiple entities in the industrial, environmental, and hazardous waste containment and removal field (including CVI, Cycle Chem, Inc., and Allstate Power Vac, Inc.) and merging their operations together. According to Kinderhook's website, ACV now operates as a "portfolio company" of Kinderhook.

21.     ACV maintains its principal place of business at 1500 Rahway Avenue, Avenel, New Jersey 07001.

22.     Upon information and belief, ACV ENVIRO 1045 RE LLC and ACV ENVIRO CV are either successor corporations to, or co-employers with, ACV and CVI with respect to the employment of each of the Plaintiffs.

23.     Each of the Plaintiffs in this action are either current or former employees of CVI, ACV, ACV ENVIRO CV and/or ACV ENVIRO 1045 RE, LLC (collectively the "Defendants").

24.     Plaintiffs bring this action against Defendants for failure to pay prevailing wages as required under the: (1) New Jersey Prevailing Wage Act, N.J.S.A. 34:11–56.25, et seq.; (2) Prevailing Wage for Construction Work On A Public Utility, N.J.S.A. 34:13B–2.1 and  N.J.S.A. 34:13B–16; and (3) Prevailing Wage Requirement, Construction Undertaken with BPU Financial Assistance, N.J.S.A. 48:2–29.47 (collectively, the "N.J. Prevailing Wage Statutes").

25.     Plaintiffs further bring this action against Defendants for breach of contract, for Defendants' failure to pay Plaintiffs' wages consistent with contracted rates on certain projects in New York State.

26.     Plaintiffs further bring this action against Defendants for failure to pay their overtime wages properly, pursuant to the: (1) New Jersey Wage Payment Law, N.J.S.A. 34:11–56a4 and N.J.A.C. 12:56–13.3; and (2) Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

## PREVAILING WAGE ACT PROJECTS

27.     Plaintiffs worked for ACV/CVI in a variety of roles and positions throughout their employment, including but not limited to working as laborers, machine operators and drivers,

technicians, and hands-on supervisors. Plaintiffs were paid at rates varying between $11.00 and $30.00 per hour.

28.     At times during their employment, Plaintiffs worked on various projects for Defendants pursuant to contracts with contractors that qualified as public entities or public bodies, within the meaning of the N.J. Prevailing Wage Statutes.

29.     Upon information and belief, Plaintiffs worked on projects and/or jobs that were paid for using public funds and/or were performed on public property or premises ("Prevailing Wage Jobs").

30.     Upon information and belief, these projects were awarded to Defendants ACV/CVI after the successful submission of a contract bid, which bid included wage rates that Defendants ACV/CVI committed to paying their workers should they be awarded and perform the contract. Plaintiffs were the intended third-party beneficiaries of these contracts.

31.     The work that Plaintiffs performed on these Prevailing Wage Jobs included: operating heavy machinery (such as vacuum or "guzzler" trucks; operating "jet rodder" trucks; operating liquid trucks); operating light machinery (operating a pressure washer); driving (delivering materials to work sites; hauling waste from work sites); and performing incidental manual labor (coiling and uncoiling vacuum hoses; using wrenches, shovels, pry bars, saws, etc., as the needs arose).

32.     The work that Plaintiffs performed on these Prevailing Wage Jobs qualified their roles or positions as crafts/trades pursuant to Regulations from the New Jersey Department of Labor.

33.     At times during their employment, at least some of Plaintiffs were paid rates lower than the prevailing wage, despite performing work for which they should have received the prevailing wage.

## PSE&G PROJECTS

34.     On each of the various Prevailing Wage Jobs, Plaintiffs performed similar work involving industrial, environmental, and hazardous waste containment and removal services.

35.     On each of the various Prevailing Wage Jobs Plaintiffs were entitled to receive prevailing wage for this work but were improperly paid lower wages.

36.     For example, Defendants assigned Plaintiffs to work on Prevailing Wage Jobs for PSE&G.

37.     Defendants paid at least some of Plaintiffs at their then-regular rate of pay for work performed for PSE&G on these Prevailing Wage Jobs, despite being entitled to receive a higher prevailing wage pursuant to the N.J. Prevailing Wage Statutes and/or the contracts Plaintiffs were performing under.

38.     PSE&G is a public utility electricity and gas company that is regulated by the New Jersey Public Utility Commission under the provisions of Title 48 of the New Jersey Revised Statutes.

39.     After Hurricane Sandy, PSE&G sought and ultimately obtained Public Utility Commission approval in 2014 for a $1.22 billion project known as the Energy Strong Program for the upgrading of PSE&G's electrical and gas infrastructure across the State.

40.     The Public Utility Commission formally issued its Order Approving Stipulation of Settlement of the PSE&G Energy Strong Program effective May 23, 2014, allowing PSE&G to

raise the Program monies through a series of rate hikes and increases on New Jersey resident customers.

41.     More specifically, the Energy Strong Program, as approved by the Commission, authorized PSE&G to spend the approved monies on the demolition, reconstruction and upgrading of PSE&G's New Jersey electrical facility switching stations, included, but not limited to, sites where at least some of Plaintiffs performed work without receiving prevailing wage.

42.     PSE&G's own literature regarding the Energy Strong Program states that the utility "put thousands of skilled contractors and laborers to work" at its facilities.

43.     This work included the wholesale demolition of existing large electrical power transformers installed at PSE&G facilities and the construction of new, larger replacement transformers.

44.     These electrical transformer structures each contain thousands of gallons of transformer oil necessary for the operation and insulation of the structures.

45.     Accordingly, emptying the transformer oil tank, including the contemporaneous containment and removal of any spillage or contaminated soil, water, or other material is an essential step in the demolition and retirement of a transformer.

46.     Likewise, the act of filling a new transformer's tank with thousands of gallons of oil, and all associated contemporaneous environmental containment and removal work, is an essential step in installing a new transformer and in the construction of an electrical system.

47.     At all relevant times, PSE&G retained, used, and employed Defendants as contractors in providing transformer oil removal, contemporaneous environmental containment, and contaminated and hazardous material disposal work that was part of the

deconstruction and construction of electrical transformers at PSE&G switching station facilities in New Jersey.

48.    Each of the Plaintiffs was assigned by Defendants to work as, respectively, laborers, machine operators and drivers, technicians, and hands-on supervisors engaging in the on-site work of pumping transformer oil, monitoring, containing, storing, and ultimately removing oil, soil, water, and other pollutants and contaminants from within and underneath the transformers.   This work was performed with the use of equipment and machinery including (but not limited to) containment units, vac-trucks, frack-tanks, roll frames, rack trucks, box trucks, skid steers, berms, submersible pumps, drums, and water blasters.

49.    Likewise, Plaintiffs were on-site during the construction and installation of new transformer structures to provide environmental watch and containment for the transformer structures as they were being installed, and to remove any and all water, soil, transformer oil, or contaminants occasioned by the installation/construction.

50.    Plaintiffs' hours and work performed at PSE&G sites were documented on time/work sheets that were submitted to Defendants' management/payroll, and which were used by Defendants to invoice and charge PSE&G for the work performed.   Upon information and belief, all such time/work sheets and related PSE&G work documentation have been maintained by Defendants in accordance with regulatory requirements and by PSE&G as well.

51.    With respect to their work at PSE&G facilities, Plaintiffs were at all relevant times engaged in "construction work on a public utility" as defined in N.J.S.A. 34:13B–16, as their work involved and was connected to construction, reconstruction, installation, demolition, restoration and alterations of facilities of a public utility.

52.     The Plaintiffs were at all relevant times entitled to be paid prevailing wage rates by Defendants for their work as laborers, machine operators and drivers, technicians, and hands-on supervisor at PSE&G facilities.

53.     Defendants at all relevant times failed to pay Plaintiffs the prevailing wage rates and supplements to which the Plaintiffs were entitled.

54.     Plaintiffs seek to recover the prevailing wages and supplements to which they were entitled under the N.J. Prevailing Wage Statutes but did not receive.

## CONTRACT PROJECTS

55.     At times during their employment, Plaintiffs were assigned to work and did work on projects in the State of New York, which work constituted "public work" within the definition of N.Y. Lab. Law § 220(2).

56.     Further, upon information and belief, Defendants assigned Plaintiffs to work on these projects pursuant to contracts entered into between Defendants and various public entities or bodies (or third-parties acting in place of, on behalf of, and for the benefit of such public entity), including but not limited to: Amtrak; NYC Transit; MTA; ConEd; and, Westchester County, N.Y. (hereinafter "Contract Projects").

57.     Pursuant to N.Y. Lab. Law § 220, et seq., Defendants were required to pay Plaintiffs at prevailing wage rates for work performed on the Contract Projects.

58.     Upon information and belief, Defendants entered into contracts to perform the work of the Contract Projects with the various public entities or bodies (or third parties acting in place of, on behalf of, and for the benefit of such public entity) contracting for the work and/or

entered into contracts to perform the work of the Contract Projects which qualified as municipal projects.

59.     Upon information and belief, Defendants set forth wage rates that they would pay their employees for performing the Contract Project work. These rates were consistent with the required prevailing wage rates applying to such work under N.Y. Lab. Law § 220, et seq.

60.     As the ultimate recipients of the wage rates agreed to under these contracts, Plaintiffs were the intended third-party beneficiaries of these contracts.

61.     On each of the various Contract Projects, at least some of Plaintiffs performed work for Defendants but were improperly paid lower wages than they were entitled to pursuant to contract.

62.     For example, Defendants assigned Plaintiffs to work on Contract Projects for the National Railroad Passenger Corporation ("Amtrak").

63.     Amtrak was established and enacted by the United States Congress in 1970 and is wholly owned and controlled by the U.S. Government.

64.     Notwithstanding the Federal Government's control of Amtrak, many of the repair and maintenance projects undertaken on Amtrak facilities or equipment receive funding from the State or locality where the project takes place.

65.     Amtrak's "Northeast Corridor Capital Investment Plan, Fiscal Years 2019–2023" provides detailed breakdowns of the funding sources for various Amtrak repair and maintenance projects and demonstrates that many projects undertaken on Amtrak facilities or equipment are funded largely or entirely through State and Local funds.

66.     By way of example, the Capital Investment Plan identifies the $253.5 million "Penn Station New York – LIRR Projects" as being funded entirely through "State/Local Funds" (with $170 Million of the funding specifically identified as "MTA Capital Plan" funds).

67.     Upon information and belief, Defendants contracted with Amtrak to perform work on certain projects which were paid for using State and/or Local funds. Therefore, these contracts were entered into "by a third party acting in place of, on behalf of and for the benefit of such" public entities subject to N.Y. Lab. Law § 220(2).

68.     Additionally, all contracts entered into between Defendants and Amtrak are for the benefit of the state and local entities wherein the work takes place and thus is subject to N.Y. Lab. Law § 220(2).

69.     As with PSE&G above, at all relevant times, Plaintiffs were assigned by Defendants to work at Amtrak facilities in New York and New Jersey to provide the environmental containment, removal, and disposal services for construction projects including the demolition of track and other railroad structures.

70.     As with PSE&G above, Plaintiffs were assigned by Defendants to work as, respectively, laborers, machine operators and drivers, technicians, and hands-on supervisors engaging in the on-site work.

71.     Specifically, Plaintiffs duties included, but were not limited to, emptying and cleaning out tanks; power washing tanks and equipment; and removing debris, sediment, and other waste material from Amtrak sites and disposing of it.

72.     As an additional example, Defendants assigned Plaintiffs to work on Contract Projects for Consolidated Edison, Inc. and/or its subsidiaries, including Consolidated Edison Company of New York, Inc. (hereafter collectively "ConEd").

73.     ConEd is one of the largest energy companies in the United States and is a major provider of electric, gas, and steam service in New York City and Westchester County, New York.

74.     Upon information and belief, Defendants contracted with ConEd to perform work on certain projects which were paid for using State and/or Local funds. Therefore, these contracts were entered into "by a third party acting in place of, on behalf of and for the benefit of such" public entities subject to N.Y. Lab. Law § 220(2).

75.     Additionally, all contracts entered into between Defendants and ConEd are for the benefit of the state and local entities wherein the work takes place and thus is subject to N.Y. Lab. Law § 220(2).

76.     For example, pursuant to ConEd Blanket Purchase Agreement 4103264 ("ConEd BPA"), approved February 5, 2013, Defendants entered into a contract with ConEd to perform flushing, cleaning, and waste product disposal work at ConEd's subsurface electric distribution structures throughout their territories of Bronx, Brooklyn, Manhattan, Queens, Staten Island, Westchester, Orange, Rockland.

77.     Pursuant to the ConEd BPA, Defendants agreed to pay their employees specified rates for work performed on that project, which rates were substantially greater than the rates Defendants paid Plaintiffs.

78.     As with PSE&G and Amtrak above, at all relevant times, Plaintiffs were assigned by Defendants to work at ConEd facilities in New York to provide the environmental containment, removal, and disposal services for construction and maintenance projects.

79.     As with PSE&G and Amtrak above, Plaintiffs were assigned by Defendants to work as, respectively, laborers, machine operators and drivers, technicians, and hands-on supervisors engaging in the on-site work.

80.     Specifically, Plaintiffs duties included, but were not limited to, opening manhole covers; cleaning subsurface electric distribution structures and surrounding areas; vacuuming out oils and heavy residue; power washing and cleaning surfaces; decontaminating and remediating environmental contaminants; and removing debris, sediment, fluids, and other waste material from ConEd sites and disposing of it.

81.     Plaintiffs were at all relevant times entitled to be paid either prevailing or contracted wage rates by Defendants for their work as laborers, machine operators and drivers, technicians, and hands-on supervisors employed on the Contract Projects.

82.     Defendants at all relevant times failed to pay Plaintiffs the prevailing or contracted wage rates and supplements to which Plaintiffs were entitled in connection with the Contract Projects.

83.     Plaintiffs seek to recover the unpaid wages and supplements to which they were entitled but did not receive.

**UNPAID OVERTIME**

84.     Throughout their employment, at least some of Plaintiffs were not paid overtime wages that were due to them.

85.     For some of these Plaintiffs – including Plaintiffs Perez, Bowen, DeJesus, Jones, McNeill and Brunson (hereinafter "Supervisor Plaintiffs") – Defendants' failed to properly pay their overtime wages, consistent with Defendants' "Supervisor Overtime Scheme."

86.     Pursuant to the Supervisor Overtime Scheme, Defendants only paid the Supervisor Plaintiffs for hours worked in excess of 47.5 hours in a week.

87.     Defendants explained this scheme by stating that the Supervisor Plaintiffs were paid salary for the first 47.5 hours of the week and received overtime for hours worked in excess of their salary hours.

88.     Additionally, at times during their employment, at least some of Plaintiffs were only paid overtime wages for hours worked prior to 6:00 a.m. or after 6:00 p.m. on any given day. This meant that Plaintiffs would not receive overtime pay unless they worked hours before 6:00 a.m. or after 6:00 p.m., regardless of how many hours they worked between 6:00 a.m. and 6:00 p.m. during a given week.

89.     Additionally, at times during their employment, at least some of Plaintiffs were paid less than one and one-half (1.5) times their hourly rate of pay for overtime hours in certain weeks, without explanation.

90.     In or about 2018, some of the Supervisor Plaintiffs met with Matthew Ward, a Vice President at the Company. During this meeting Mr. Ward told Plaintiffs something to the effect that, contrary to the Company's longstanding representations to Plaintiffs that they were being paid a salary, Plaintiffs "are not salaried," "should not be salaried," and "should have been 40-hour employees."

91.     During this meeting, Mr. Ward represented to these Supervisor Plaintiffs something to the effect that, if the Supervisor Plaintiffs were switched from salary to hourly, "nothing will change. Hourly rates won't change. Benefits won't change."

92.     Thereafter, the Supervisor Plaintiffs began receiving overtime wages for hours worked in excess of 40 hours each week.

93.     However, contrary to Mr. Ward's representations, Defendants artificially reduced at least some of the Supervisor Plaintiffs' hourly rates of pay.

94.     According to statements made to some of the Supervisor Plaintiffs by Hugo Ramos, a manager at the Company, the Company made the changes to reduce hourly rates in order to offset the increased overtime payments they were making.

95.     Likewise, according to statements made to some of Plaintiffs by Jason Wellins, another manager at the Company, the Company made the changes to reduce hourly rates in order to offset the increased overtime payments they were making.

96.     As a result of these rate reductions, these Supervisor Plaintiffs' wages remained relatively static, with at least some of the Supervisor Plaintiffs receiving lower wages in a given week than they had been received under the Company's Supervisor Overtime Scheme.

97.     Plaintiffs maintain that they are owed overtime pay and other unpaid wages.

## FIRST COUNT

**FAILURE TO PAY PREVAILING WAGE**
**CONSTRUCTION WORK ON A PUBLIC UTILITY**

98.     Plaintiffs incorporates and restates each of the allegations contained in the preceding paragraphs as if set forth at length herein.

99.   Defendants violated N.J.S.A. 34:13B–2.1 and 34:13B–16 by failing to pay Plaintiffs the required and proper prevailing wage rates to which they were entitled for work at facilities of public utilities.

100.   As a result, Defendants are liable to Plaintiffs for all unpaid and due prevailing wages to which Plaintiffs are entitled.

WHEREFORE, Plaintiffs demand the following damages and relief:

a.   Judgment in favor of the Plaintiffs;

b.   Compensatory damages for all unpaid prevailing wages and supplements;

c.   Appropriate and/or statutory interest;

d.   Attorneys' fees;

e.   Costs of suit;

f.   Any other relief that this Court deems just and equitable.

## SECOND COUNT

### FAILURE TO PAY PREVAILING WAGE FOR CONSTRUCTION WORK UNDERTAKEN WITH BPU FINANCIAL ASSISTANCE

101.   Plaintiffs incorporate and restate each of the allegations contained in the preceding paragraphs as if set forth at length herein.

102.   Defendants also violated N.J.S.A. 48:2–29.47 by failing to pay Plaintiffs the required and proper prevailing wages rates to which they were entitled for work at PSE&G facilities with respect to the Energy Strong Program.

103.   N.J.S.A. 48:2–29.47 provides that the "prevailing wage rate shall be paid to workers in the performance of any construction undertaken in connection with Board of Public Utilities financial assistance...."

16

104.    "Financial assistance" is further defined in the law as "any tax exemption, abatement, or other incentive or any rebate, credit, loan, loan guarantee, expenditure, investment, grant, incentive, or other financial assistance which is, in connection with construction, approved, funded authorized, administered or provided by the Board of Public Utilities..."

105.    All construction, renovation and preparation work by and for PSE&G at its facilities, as engaged in by the Plaintiffs, pursuant to the Energy Strong Program was approved and authorized by the Board of Public Utilities.

106.    As a financial incentive and/or assistance to PSE&G for its expenditures in implementing and carrying out the Energy Strong Program, the Board of Public Utilities authorized and agreed to grant and allow PSE&G certain rate hikes to which PSE&G would not otherwise have been entitled.

107.    Accordingly, the Plaintiffs were entitled to the prevailing wage rate with respect to all work done by them at PSE&G facilities pursuant to the Energy Strong Program.

108.    Likewise, Plaintiffs were entitled to be paid at the applicable prevailing wage rates with respect to all work done by them at other projects and/or jobs that were paid for with BPU financial assistance.

109.    Defendants at all relevant times failed to pay Plaintiffs the prevailing wage rates and supplements to which the Plaintiffs were entitled for such work.

110.    As a result, Defendants are liable to Plaintiffs for all unpaid and due prevailing wages to which Plaintiffs are entitled.

WHEREFORE, Plaintiffs demand the following damages and relief:

a.      Judgment in favor of the Plaintiffs;

b.      Compensatory damages for all unpaid prevailing wages and supplements;

c.      Appropriate and/or statutory interest;

d.      Attorneys' fees;

e.      Costs of suit;

f.      Any other relief that this Court deems just and equitable.

### THIRD COUNT

### FAILURE TO PAY PREVAILING WAGE FOR PUBLIC WORK
### N.J.S.A. 34:11–56.25, et seq.

111.     Plaintiffs incorporate and restate each of the allegations contained in the preceding paragraphs as if set forth at length herein.

112.     Defendants also violated the New Jersey Prevailing Wage Act, N.J.S.A. 34:11–56.25 et seq., by failing to pay Plaintiffs the required and proper prevailing wage rates to which they were entitled for certain projects and/or jobs.

113.     These projects and/or jobs were paid for using public funds and/or were performed on public property or premises. Accordingly, these projects and/or jobs constituted "public work" within the meaning of the Prevailing Wage Act.

114.     Accordingly, Plaintiffs were entitled to receive prevailing wages for the work they performed on the projects and/or jobs.

115.     Defendants at all relevant times failed to pay Plaintiffs the prevailing wage rates and supplements to which the Plaintiffs were entitled for such work.

116.     As a result, Defendants are liable to Plaintiffs for all unpaid and due prevailing wages to which Plaintiffs are entitled.

18

WHEREFORE, Plaintiffs demand the following damages and relief:

a.  Judgment in favor of the Plaintiffs;

b.  Compensatory damages for all unpaid prevailing wages and supplements;

c.  Appropriate and/or statutory interest;

d.  Attorneys' fees;

e.  Costs of suit;

f.  Any other relief that this Court deems just and equitable.

## FOURTH COUNT

### BREACH OF CONTRACT

117.  Plaintiffs incorporate and restate each of the allegations contained in the preceding paragraphs as if set forth at length herein.

118.  Defendants entered into contracts with public entities (or with third parties acting in place of, on behalf of, and for the benefit of such public entity) to perform work on various projects, which work constituted "public work," within the meaning of N.Y. Lab. Law § 220 et seq.

119.  Throughout their employment, Plaintiffs performed work for Defendants on these projects and pursuant to these contracts.

120.  Through these contracts, Defendants agreed to pay their employees who performed work pursuant to these contracts at certain wage rates, which rates were consistent with the prevailing wage rates applicable to such work (as defined under N.Y. Lab. Law § 220 et seq.).

19

121.     Accordingly, those Plaintiffs who performed work pursuant to those contracts were entitled to be paid wages at the contract rates and were the intended third-party beneficiaries of those contracts.

122.     Defendants at all relevant times failed to pay Plaintiffs the contracted wage rates and supplements to which the Plaintiffs were entitled for such work.

123.     As a result, Defendants are liable to Plaintiffs for all unpaid and due wages to which Plaintiffs are entitled.

WHEREFORE, Plaintiffs demand the following damages and relief:

a.     Judgment in favor of the Plaintiffs;

b.     Compensatory damages for all unpaid wages and supplements;

c.     Appropriate and/or statutory interest;

d.     Attorneys' fees;

e.     Costs of suit;

f.     Any other relief that this Court deems just and equitable.

**<u>FIFTH COUNT</u>**

**THE NEW JERSEY WAGE PAYMENT LAW ("NJ WAGE PAYMENT LAW")**
**THE NEW JERSEY WAGE AND HOUR LAW**

124.     Plaintiffs repeat and reallege every prior allegation of the within Complaint as if set forth at length herein.

125.     Defendants are an "employer" within the meaning of the New Jersey Wage and Hour law.

126.     Plaintiffs are "employees" within the meaning of the New Jersey Wage and Hour Law.

20

127.    N.J.S.A. 34:11-56a4 and N.J.A.C. 12:56-13.3 require Defendants to pay for all hours worked and to compensate all non-exempt employees at a rate no less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per work week.

128.    Defendants failed to pay Plaintiffs overtime wages for hours that they worked in excess of forty 40 hours in a work week.

129.    As a result of Defendants' conduct, Plaintiffs have suffered loss of income and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for harm suffered as follows:

a.    Back pay and benefits;

b.    Front pay and benefits;

c.    Compensatory damages;

d.    Consequential damages;

e.    Punitive damages;

f.    Equitable Relief;

g.    Pre-judgment interest and enhancements to off-set negative tax consequences;

h.    All attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by plaintiffs in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

i.    Declaring that the Defendant ACV has violated the New Jersey Wage and Hour

Law and requiring Defendant ACV to take appropriate corrective action to end

unlawful wage payment violations; and

j.        Such other and further relief as may be available pursuant to the New Jersey

Wage and Hour Law and which the Court deems just and equitable.

## SIXTH COUNT

### FAILURE TO PAY OVERTIME WAGES
### FAIR LABOR STANDARDS ACT ("FLSA"), 29 U.S.C. § 201 et seq.

130.    Plaintiffs repeat and reallege every prior allegation of the within Complaint as if

set forth at length herein.

131.    Plaintiffs worked more than forty hours in one or more workweeks.

132.    Because Defendants paid Plaintiffs straight time for hours worked in excess of 40

hours per workweek, Defendants did not pay Plaintiffs at least one and a half times their

normal hourly rate for time worked in excess of forty hours per workweek.

133.    By failing to pay Plaintiffs their proper overtime wages, despite acknowledging

that Plaintiffs were eligible for overtime pay, Defendants have willfully violated the Fair Labor

Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

134.    Defendant ACV engaged in, participated in, condoned, ratified, perpetuated

and/or aided and abetted violation of the FLSA.

135.    As a result of Defendants' willful violations, Plaintiffs are entitled to damages,

including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs,

and attorneys' fees.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for harm suffered as

follows:

a.      Compensatory damages;

b.      Consequential damages;

c.      Punitive damages;

d.      Pre-judgment interest and enhancements to off-set negative tax consequences;

e.      All attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

f.      Such other and further relief as may be available pursuant to the FLSA.


SMITH EIBELER, LLC

BY:     */s/Robert W. Smith*

Dated: December 19,2019          ROBERT W. SMITH, ESQ.


ZATUCHNI & ASSOCIATES, LLC

BY:     */s/David Zatuchni*

Dated: December 19, 2019         DAVID ZATUCHNI, ESQ.
Attorneys for Plaintiffs


**CERTIFICATION**

Pursuant to Rule 4:5-1, it is hereby stated to the best of my knowledge and belief that the matter in controversy is not the subject of any other action pending or contemplated in any other court or of a pending arbitration proceeding.  Further, Plaintiffs are unaware of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same

transactional facts.  I further certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

SMITH EIBELER, LLC

By:    */s/Robert W. Smith*
Dated: December 19, 2019        ROBERT W. SMITH, ESQ.
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

SMITH EIBELER, LLC

By:    */s/Robert W. Smith*
ROBERT W. SMITH
Attorneys for Plaintiffs

Dated:  December 19, 2019

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, David Zatuchni, Esq. is designated as trial counsel for the above-captioned matter.

SMITH EIBELER, LLC

By:    */s/Robert W. Smith*
ROBERT W. SMITH
Attorneys for Plaintiffs
Dated:  December 19, 2019

24

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-004384-19

**Case Caption:** PEREZ KEVIN  VS CLEAN VENTURE, INC.

**Case Initiation Date:** 12/19/2019

**Attorney Name:** ROBERT W SMITH

**Firm Name:** SMITH EIBELER LLC

**Address:** 101 CRAWFORDS CORNER RD STE 1-105R

HOLMDEL NJ 07733

**Phone:** 7329357246

**Name of Party:** PLAINTIFF : PEREZ, KEVIN

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** EMPLOYMENT (OTHER THAN CEPA OR LAD)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?**  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

12/19/2019

Dated

/s/ ROBERT W SMITH

Signed

SMITH EIBELER, LLC
Robert W. Smith, Esq. ID# 044341987
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
(732) 935-7246

ZATUCHNI & ASSOCIATES,LLC
David Zatuchni, Esq. ID# 077811997
287 South Main Street
Lambertville, NJ 08530
(609) 243-0300

| | |
|---|---|
| KEVIN PEREZ; DWAYNE BOWEN; REYNALDO DEJESUS; KELVIN JONES; TIMOTHY MCNEILL; SCOTT BRUNSON; JERMAINE BENDERS; GEORGE BOSCH; ROBERTO COSME; KYLE JOBES; JACQUES MANN; AMIR MUHAMMAD; EDWIN NUNEZ; JOEL RIOS; ANTHONY BRUNO and GREGORY LINDSEY,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CLEAN VENTURE, INC. d/b/a ACV ENVIRO CV, and ACV ENVIRO 1045 RE LLC; ACV ENVIRO CORPORATION; CORPORATIONS 1-10; JOHN DOES 1-10,<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: UNION COUNTY<br>DOCKET NO: UNN-4384-19<br><br><br><br>CIVIL ACTION<br><br><br>COUNSEL'S NOTICE OF APPEARANCE ON BEHALF OF PLAINTIFFS |

David Zatuchni, Esq. of Zatuchni & Associates, LLC hereby makes his notice of appearance as co-counsel on behalf of the Plaintiffs in this matter.

David Zatuchni, Esq.
Zatuchni & Associates, LLC
287 South Main Street
Lambertville, NJ 08530
609-243-0300
davidz@zatlaw.com
Co-counsel for Plaintiffs

Dated:  December 27, 2019

```
UNION COUNTY SUPERIOR COURT
2 BROAD STREET
CIVIL DIVISION
ELIZABETH         NJ 07207
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (908) 787-1650
COURT HOURS  8:30 AM - 4:30 PM

                          DATE:   DECEMBER 19, 2019
                          RE:     PEREZ KEVIN  VS CLEAN VENTURE, INC.
                          DOCKET: UNN L -004384 19

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON ALAN G. LESNEWICH

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (908) 787-1650.

      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                          ATTENTION:
                                 ATT: ROBERT W. SMITH
                                 SMITH EIBELER LLC
                                 101 CRAWFORDS CORNER RD
                                 STE 1-105R
                                 HOLMDEL         NJ 07733


ECOURTS
```

KEVIN PEREZ, ET AL

**Plaintiff**

VS

CLEAN VENTURE, INC. D/B/A ACV ENVIRO CV, ET AL

**Defendant**

20191220152244

Superior Court Of New Jersey

UNION Venue

Docket Number: UNN L 4384 19

**Person to be served** (Name and Address):
ACV ENVIRO 1045 RE, LLC,
820 BEAR TAVERN ROAD
WEST TRENTON  NJ  08628
By serving:  THE CORPORATION TRUST CO., R.A.

**Attorney:** ROBERT W. SMITH, ESQ.

**Papers Served:** SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT
NOTICE, CERTIFICATION

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

| **Service Data:** | [X] Served Successfully | [ ] Not Served |

Name of Person Served and relationship/title:

Date/Time:   12/23/2019 1:48 PM       _____

SCOTT KUNTZ_____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing
therein (indicate name & relationship at right)

PERSON AUTHORIZED TO ACCEPT SERVICE

[X] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

**Description of Person Accepting Service:**

SEX:M_  AGE:36-50_ HEIGHT: 5'9"-6'0"_   WEIGHT: OVER 200 LBS._  SKIN:WHITE____   HAIR:BROWN__  OTHER:_____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:          Date/Time: _____
                             Date/Time: _____
                             Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this

_____24_____ day of ___Dec____ , 20 _19_

Notary Signature:_____KG_____

KIMBERLY GROTE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 18, 2020

Name of Notary          Commission Expiration

I, JANE NUNN,
was at the time of service a competent adult, over the age of
18 and not having direct interest in the litigation. I declare
under penalty of perjury that the foregoing is true and
correct.

M. Jane Nunn          12/24/20 19
Signature of Process Server          Date

Name of Private Server: JANE NUNN  Address: 2009 Morris Avenue, UNION, NJ 07083  Phone: (800) 672-1952

KEVIN PEREZ, ET AL

|  | Plaintiff |
|---|---|

VS

CLEAN VENTURE, INC. D/B/A ACV ENVIRO CV, ET AL

| | Defendant |
|---|---|

20191220152320

Superior Court Of New Jersey

UNION Venue

Docket Number: UNN L 4384 19

**Person to be served** (Name and Address):
ACV ENVIRO CORPORATION,
820 BEAR TAVERN ROAD
WEST TRENTON  NJ  08628
By serving:  THE CORPORATION TRUST CO., R.A.

**Attorney:** ROBERT W. SMITH, ESQ.

**Papers Served:** SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT NOTICE, CERTIFICATION

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

**Service Data:**     [X] Served Successfully        [ ] Not Served

Date/Time:     12/23/2019 1:47 PM     _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

Name of Person Served and relationship/title:

SCOTT KUNTZ _____

PERSON AUTHORIZED TO ACCEPT SERVICE

**Description of Person Accepting Service:**

SEX:M___   AGE:36-50_  HEIGHT: 5'9"-6'0"___   WEIGHT: OVER 200 LBS.___   SKIN:WHITE_____    HAIR:BROWN____   OTHER:_____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:          Date/Time: _____
                                      Date/Time: _____
                                      Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this
__24__ day of __Dec__, 20____

Notary Signature:_____

KIMBERLY GROTE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 18, 2023

Name of Notary          Commission Expiration

I, JANE NUNN,
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

M. Jane Nunn          12/24/2019
Signature of Process Server          Date

Name of Private Server: JANE NUNN  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952

20191220152004

KEVIN PEREZ, ET AL

| Plaintiff

VS

CLEAN VENTURE, INC. D/B/A ACV ENVIRO CV, ET AL

| Defendant

Superior Court Of New Jersey

UNION Venue

Docket Number: UNN L 4384 19

**Person to be served** (Name and Address):
CLEAN VENTURE, INC. D/B/A ACV ENVIRO CV,
820 BEAR TAVERN ROAD
WEST TRENTON  NJ  08628
By serving:  THE CORPORATION TRUST CO., R.A.

**Attorney:** ROBERT W. SMITH, ESQ.

**Papers Served:** SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT
NOTICE, CERTIFICATION

**Service Data:**     [X] Served Successfully       [ ] Not Served

Date/Time:    12/23/2019 1:48 PM

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing
therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

Name of Person Served and relationship/title:

SCOTT KUNTZ

PERSON AUTHORIZED TO ACCEPT SERVICE

**Description of Person Accepting Service:**

SEX:M    AGE:36-50   HEIGHT: 5'9"-6'0"      WEIGHT: OVER 200 LBS.    SKIN:WHITE        HAIR:BROWN    OTHER:_____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:              Date/Time:_____
                                Date/Time:_____
                                Date/Time:_____

Other:

**Served Data:**
Subscribed and Sworn to me this

_____24_____ day of ___Dec___, 20 _19_

Notary Signature:_____

KIMBERLY GROTE
NOTARY PUBLIC OF NEW JERSEY
Name of Notary          Commission Expiration
My Commission Expires Dec. 18, 2020

I, JANE NUNN,
was at the time of service a competent adult, over the age of
18 and not having direct interest in the litigation. I declare
under penalty of perjury that the foregoing is true and
correct.

M. Jane Nunn          12/24/20 19
Signature of Process Server         Date

Name of Private Server: JANE NUNN  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952